```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )
          v.                        )    Criminal No. 2018-30
                                    )
PAUL GIRARD, SHAQUAN PRENTICE,      )
ROBERT BROWN, WAHILLI JAMES,        )
SHAQUIELLE CORREA, JAMES CRUZ,      )
KAREEM HARRY, TYLER EUGENE,         )
ETHERNEAL SIMON, SHERMYRA GUMBS,    )
WAYNE BELLILLE,                     )
                                    )
          Defendants.               )
```

**ATTORNEYS:**

**Gretchen C.F. Shappert, United States Attorney**
**George A Massucco-LaTaif, AUSA**
**Meredith Jean Edwards, AUSA**
**Juan Albino, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
**Alphonso G. Andrews, AUSA**
United States Attorney's Office
Christiansted, U.S.V.I.
  *For the United States of America,*

**Ryan W. Greene**
St. Thomas, U.S.V.I.
  *For Paul Girard,*

**Adriane J. Dudley**
**Malorie Diaz**
Dudley Rich Davis LLP
St. Thomas, U.S.V.I.
  *For Shaquan Prentice,*

**Renee Marie Andre**
Law Offices of Marjorie Rawls-Roberts PC
St. Thomas, U.S.V.I.
  *For Robert Brown,*

**Alex Omar Rosa-Ambert**
Rosa-Ambert Law Offices
San Juan, PR
    *For Wahilli James,*

**Jason Gonzalez-Delgado**
Hato Rey, PR
    *For Shaquielle Correa,*

**Miguel Oppenheimer**
San Juan, PR
    *For James Cruz,*

**Kye Walker**
St. Croix, U.S.V.I.
**Frantz J. McLawrence**
The McLawrence Law Firm
Fort Lauderdale, Fl
    *For Kareem Harry,*

**Richard F. Farrelly**
Law Offices of Birch DeJongh & Hindels PLLC
St. Thomas, U.S.V.I.
    *For Tyler Eugene,*

**Richard H. Dollison**
**Michall Joseph LaRochell**
Law Offices of Richard H. Dollison PC
St. Thomas, U.S.V.I.
    *For Etherneal Simon,*

**Kendys Pimentel-Soto**
Kendys Pimentel-Soto Law Office LLC
San Juan, PR
    *For Shermyra Gumbs,*

**Alexander Golubitsky**
Alex Golubitsky P.C.
St. Thomas, U.S.V.I.
    *For Wayne Bellille.*

**ORDER**

**GÓMEZ, J.**

On November 8, 2019, this Court entered an order requiring Assistant United States Attorney George A. Massucco-LaTaif ("Attorney Massucco-LaTaif") to show cause why he should not be sanctioned pursuant to the Court's inherent authority for his behavior at a November 7, 2019, status conference in this matter. *See* Order, November 8, 2019, ECF No. 591. In that order, the Court briefly described the factual and procedural history of this case, before describing the events of the November 7, 2019, status conference. The first half of that status conference occurred off the record. The second half of that status conference occurred on the record.

First, the Court described Attorney Massucco's behavior off record.

> During the first session of the November 7, 2019, status conference, which was off the record, Assistant United States Attorney George A. Massucco-LaTaif ("Attorney Massucco-LaTaif") expressed his opinion that this trial should not be severed but rather tried as a single trial. Attorney Massucco-LaTaif also stated that, if the trial was to be severed, Gumbs should be moved from Group One to Group Two. In either case, Attorney Massucco-LaTaif asserted that the best date for a trial in this matter was no sooner than June 1, 2020.
>
> Attorney Massucco-LaTaif elaborated further. He averred that his experience conducting complicated trials involving more than ten defendants was unmatched by any individual involved in this case. Among other things, Attorney Massucco-LaTaif asserted that he had conducted several trials involving well in excess of one-hundred

>defendants. Never in his fifteen years as an attorney, Attorney Massucco-LaTaif claimed, had he seen a trial severed in the manner the Court had severed the trial in this matter. Attorney Massucco-LaTaif also derided the Court-ordered trial dates as "paper dates." Attorney Massucco-LaTaif warned that the consequences of proceeding in this manner would be dire for the United States, the defendants, and the Court itself.

*See id.* at 5-6 (footnote omitted).

Next, the Court described Attorney Massucco's behavior on the record.

>During the second session of the November 7, 2019, status conference, the Court stated that it understood that the principal position of the United States was to try this case without severance. *See* [Status Conference Tr. at 5:18-6:2, November 7, 2019, ECF No. 604] ("THE COURT: . . . And the government's suggestion is to try this, if it were to be split with who? - MR. MASSUCCO: Your Honor, our suggestion is to try this with one case. - THE COURT: Beyond that. - MR. MASSUCCO: That's our principal suggestion. - THE COURT: Understood.") []. Thereafter, the Court sought to revisit the United States's proposal with respect to an alternate arrangement of parties in the severed trials. Attorney Massucco-LaTaif was reluctant to discuss this portion of the United States's petition, and insisted on discussing the single trial option. Along that line, the following exchange occurred:
>
>>THE COURT: . . . So, the government's petition would be to remove Gumbs from the Court's split and put it into the larger group, as I understand it? Okay. We'll consider that.
>>
>>MR. MASSUCCO: That's actually not our petition, Your Honor. Our petition is that this trial --
>>
>>THE COURT: Attorney --

>MS. MASSUCCO: -- has established --
>
>THE COURT: Attorney --
>
>MR. MASSUCCO: But, Your Honor --
>
>THE COURT: Attorney.
>
>MR. MASSUCCO: -- I'm trying to make a record.
>
>THE COURT: Attorney.
>
>MR. MASSUCCO: Yes.
>
>THE COURT: You will have a chance to make a record.
>
>MR. MASSUCCO: Okay.
>
>THE COURT: If you have to submit it in writing, that's fine. But I'm not going to [have you] hijack this.
>
>MR. MASSUCCO: I'm not hijacking. I'm simply --
>
>THE COURT: All right.
>
>MR. MASSUCCO: -- trying to state what we stated before off the record --
>
>THE COURT: And you'll --
>
>MR. MASSUCCO: -- on the record. It's my right to make a record, Your Honor.
>
>THE COURT: Attorney -- of course, you can make it however you choose to.
>
>MR. MASSUCCO: Well, I'd like to do that right now while we're all present.
>
>THE COURT: Well, when I give you an opportunity to do that, then you can do that.

>        And if I choose to do it by writing, you will
>        do it by writing.
>
>        MR. MASSUCCO: Well, then, I would like to
>        summarize what we've spoke[n] about before we
>        were on the record --
>
>        THE COURT: Attorney.
>
>        MR. MASSUCCO: -- if I could.
>
>        THE COURT: Attorney. Attorney.
>
>        MR. MASSUCCO: It's my right to summarize --
>
>        THE COURT: Attorney Massucco --
>
>        MR. MASSUCCO: -- on the record --
>
>        THE COURT: Attorney Massucco --
>
>        MR. MASSUCCO: -- what we discussed.
>
>        THE COURT: Attorney Massucco, if you don't be
>        quiet, you're going to be held in contempt.
>
> [Status Conference Tr. at 8:4-10:2].

*See* Order, November 8, 2019, at 6-8, ECF No. 591.

Thereafter, the Court set a show cause hearing for November 14, 2019. *See id.* at 8.

On November 14, 2019, Attorney Massucco appeared at the show cause hearing. At that hearing, Attorney Massucco explained that his behavior at the November 7, 2019, status conference was the result of his zealous advocacy and that at no time did he intend to disrespect the Court or disrupt the proceedings. Further, Attorney Massucco asserted that no sanction beyond a stern warning was necessary or appropriate in these

circumstances. At the end of the hearing, the Court afforded Attorney Massucco an opportunity to supplement the record as to appropriate sanctions.

On November 15, 2019, Attorney Massucco submitted a document supplementing his argument. *See* Notice, ECF No. 609. In that document, Attorney Massucco maintains that a formal sanction in this case is not warranted.

In *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), the Supreme Court addressed the nature and scope of the federal courts' inherent power to control the conduct of those who appear before them. The Court began by surveying its long history of case law in this area: "It has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Id.* at 43 (quoting *United States v. Hudson*, 11 U.S. 32 (1812)) (other citation omitted). Among the implied and "'incidental'" powers of a federal court is the power "to discipline attorneys who appear before it." *Id.* (quoting *Ex parte Burr*, 22 U.S. 529 (1824)).

Employing its inherent powers, a court can control admission to its bar, discipline attorneys, punish for contempt, vacate its own judgment upon a finding of fraud, bar a criminal

defendant from a courtroom for disruptive behavior, dismiss a suit on *forum non conveniens* grounds or for failure to prosecute, and assess attorney's fees. *See Chambers*, 501 U.S. at 43-46. "Because of their very potency," however, the federal courts must be careful to exercise their inherent powers "with restraint and discretion." *Id.* at 44. "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45. Significantly, sanctions imposed under the court's inherent authority do not always require a showing of bad faith. *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 n.11 (3d Cir. 1994).

The Third Circuit has explained that "a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified." *Westinghouse Elec. Corp.*, 43 F.3d at 74. District courts "should be guided by the same considerations that guide [them] in the imposition of sanctions under the Federal Rules." *Id.*

> First, the court must consider the conduct at issue and explain why the conduct warrants sanction. . . . a pattern of wrongdoing may require a stiffer sanction than an isolated incident; a grave wrongdoing may compel a more severe sanction than might a minor infraction; and wrongdoing that actually prejudices the wrongdoer's

>     opponent or hinders the administration of justice may
>     demand a stronger response than wrongdoing that, through
>     good fortune or diligence of court or counsel, fails to
>     achieve its untoward object. Furthermore, there may be
>     mitigating factors that must be accounted for in shaping
>     the court's response.
>
>     Second, having evaluated the conduct at issue, the
>     district court must specifically consider the range of
>     permissible sanctions and explain why less severe
>     alternatives to the sanction imposed are inadequate or
>     inappropriate. Although the court need not "exhaust all
>     other sanctioning mechanisms prior to resorting to its
>     inherent power" the court must explain why it has chosen
>     any particular sanction from the range of alternatives
>     it has identified.

*Id.* (citations omitted).

Attorney Massucco's conduct is similar to the conduct addressed by the Virgin Islands Supreme Court in *In re Sheesley*, 70 V.I. 1007 (V.I. 2019). In that case, Attorney Sheesley was appointed to represent a minor, M.P.J.H., in a juvenile delinquency case. *In re Sheesley*, 70 V.I. at 1011. Sheesley filed a motion to be relieved of that appointment, arguing that a Virgin Islands Supreme Court decision, *In re Holcombe*, 63 V.I. 800 (V.I. 2015), prevented the Superior Court of the Virgin Islands ("the Superior Court") from appointing him as counsel. *Id.* The Superior Court scheduled an initial hearing in the matter for January 3, 2017. *Id.*

Sheesley attended the hearing. *Id.* However, shortly after the hearing began, Sheesley orally moved to be relieved of the appointment. *Id.* The Superior Court stated that the motion

"ha[d] been received" and would "be acted on at an appropriate time," and that Sheesley would therefore be "required to proceed with this initial hearing." *Id.* at 1011-12. Nevertheless, Sheesley persisted in arguing that his appointment was invalid pursuant to *Holcombe*. *Id.* at 1012. When the Superior Court interrupted his argument and reiterated that it would address the motion at another time and would move forward with the initial hearing, Sheesley announced that he "can't move forward." *Id.*

Notwithstanding Sheesley's refusal, the Superior Court proceeded with the initial hearing. *Id.* Thereafter, the Superior Court set a show cause hearing at which Sheesley was to "show cause why he should not be held in contempt of court for his failure to represent the minor [M.J.P.H.]." *Id.*

At the conclusion of the show cause hearing--which had been continued to a new date after Sheesley failed to appear on the initial hearing date--the Superior Court found Sheesley in criminal contempt for his conduct at the January 3, 2017, hearing, and in civil contempt for his failure to appear on the initial show cause hearing date. The trial judge directed that Sheesley pay $500 as a sanction for his misconduct and $75 in court costs for his failure to appear. The trial judge also

ordered Sheesley to write a letter of apology. *Id.* at 1016. Sheesley appealed. *Id.*

The Virgin Islands Supreme Court affirmed, explaining that

> Sheesley's characterization of his own behavior at the January 3, 2017 hearing reflects a fundamental misunderstanding of why the Superior Court ordered him to show cause, and eventually held him in criminal contempt. While Sheesley selectively quotes language from this Court's decision in *M.R.*, he ignores the facts of *M.R.*, in which an attorney had wrongfully been held in criminal contempt for making legal arguments in favor of a family reunification at a *reunification hearing*. As the Superior Court emphasized at the start of the January 3, 2017 hearing, that hearing had not been called for the purposes of addressing Sheesley's motion to be relieved as counsel, but for the minors to enter their pleas to the juvenile complaint. Nothing in *M.R.* or any other decision of this Court could reasonably be read to give an attorney *carte blanche* to make any and all arguments on each and every issue in the case at any time during any hearing. On the contrary, this Court has expressly held "that a judge possesses considerable discretion in how to dispose of the matters on his or her docket." To characterize Sheesley's conduct — repeatedly demanding that the Superior Court hear arguments on a motion that was not even fully-briefed and not the stated subject of the hearing — as nothing more than "good-faith legal argument" would effectively divest the Superior Court of its discretion to manage its own docket, and transfer that authority to attorneys and their clients.

*Id.* at 1023. Additionally, the Virgin Islands Supreme Court explained that

> the Superior Court found that Sheesley's behavior went beyond making an impermissible argument and resulted in an actual disruption in the proceeding. In its [contempt order], the Superior Court correctly noted that Sheesley's complete refusal to provide any

      representation to M.J.P.H. whatsoever — even the simple matter of reviewing the juvenile complaint for purposes of determining whether to enter a "not delinquent" plea — disrupted and delayed the proceeding, and required the Superior Court to decide between directing [the co-delinquent minor's appointed attorney] to represent M.J.P.H. at the hearing, or directing M.J.P.H. and his parents to return to court on another day. Moreover, the Superior Court expressly found that "Sheesley's conduct was beyond a reasonable doubt calculative and willfully done . . . to destroy any chance of a meaningful attorney-client relationship between himself and the minor," and that "Sheesley's misconduct was intentionally designed so that he could be relieved from the Court's appointment."

*Id.* at 1023-24. Moreover, the Virgin Islands Supreme Court found it appropriate to refer the matter to the Office of Disciplinary Counsel and the Board on Professional Responsibility "to take suitable action, if appropriate and to the extent it has not already been done." *Id.* In so doing, the Virgin Islands Supreme Court emphasized that the referral was "not a sanction in and of itself, but simply a finding that Attorney Sheesley's conduct merits further examination by the disciplinary board." *Id.*

While *In re Sheesley* is not controlling, it is instructive here.[1] This Court agrees with the Virgin Islands Supreme Court

---

[1] Attorney Massucco has directed the Court to *Saldana v. Kmart Corp.*, 260 F.3d 228 (3d Cir. 2001) and *United States v. Jones*, 505 F. App'x 192 (3d Cir. 2012), arguing that his conduct is not so egregious as to warrant sanctions.
    In *Saldana v. Kmart Corp.*, 260 F.3d 228 (3d Cir. 2001), the district court imposed sanctions against an attorney for her out-of-court vulgar language. *Saldana*, 260 F.3d at 231. The Third Circuit reversed, finding that the district court abused its discretion. *Id.* at 238. The Third Circuit explained that the "quality and quantity of the transgressions found by the district court -- four uses of the word 'fuck,' two in telephone

that no authority "give[s] an attorney *carte blanche* to make any and all arguments on each and every issue in the case at any time during any hearing." *Id.* at 1023. Here, the Court explained to Attorney Massucco that it could not permit him to hijack the status conference. *See* Status Conference Tr. at 8:22-24. Despite the fact that the Court informed Attorney Massucco that he would have the opportunity to supplement the record by making a written filing on the docket if necessary, he continued to speak over the Court's attempts to advance the proceeding until warned with contempt. Significantly, the Court addressed Attorney Massucco at least ten times to no avail. Only when the Court

---

conversations with attorneys and two in asides to attorneys during depositions, and a postverdict letter in which [the attorney] concurred with a juror who described an expert witness as a 'Nazi,'" *id.* at 237, did not support the invocation of the Court's inherent powers. Significantly, the Third Circuit explained that "[t]he language complained of in this case did not occur in the presence of the Court and there is no evidence that it affected either the affairs of the Court or the 'orderly and expeditious disposition' of any cases before it." *Id.* at 238.

In *United States v. Jones*, 505 F. App'x 192 (3d Cir. 2012), an attorney who was unable to extricate himself from a hearing with a judge failed to timely appear for a scheduled hearing before a second judge. *Jones*, 505 F. App'x at 193. The second judge imposed a $200 sanction against that attorney for his tardiness and his failure to notify the court of a potential conflict with another court appearance *Id.* The Third Circuit reversed, finding that the district court abused its discretion. *Id.* The Third Circuit explained that while "Orozco's conduct was irresponsible – he clearly should have informed the District Court of his conflicting hearing, particularly where his appearance at the conflicting hearing created the probability that the restitution hearing would be delayed," *id.* at 194., Orozco's conduct was not "so egregious as to warrant the sanction imposed," *id.*

The circumstances presented in *Saldana* and *Jones* are inapposite. In neither case did the objectionable conduct occur during a Court proceeding. Attorney Massucco's conduct occurred at a status conference in chambers where the Court and counsel for the eleven defendants in this matter were present. Moreover, Attorney Massucco's conduct and comments, like those uttered by the attorney in *In re Sheesley*, were directed at the Court.

cautioned Attorney Massucco that any further interruption would be met with contempt did Attorney Massucco yield.

In order to efficiently manage the multitude of matters before it, this Court must be able to direct the orderly and expeditious disposition of any proceeding. While zealous representation is encouraged and appreciated, Attorney Massucco's conduct on and off the record crossed the line into contumacy. Attorney Massucco's status as the Criminal Chief of the United States Attorney's Office does not relieve him of his obligation to conduct himself with the proper decorum and regard for Court directives; nor does it give him license to disrupt or control Court proceedings in the manner that he chooses.

The Court is extremely reluctant to impose a sanction. At the same time, the Court is ever mindful that fairness requires parity among similarly situated attorneys whose conduct warrants sanction. As such, the Court is not convinced that imposition of nothing more than a stern warning is sufficient to discourage Attorney Massucco's contumacious conduct and attempt to commandeer the November 7, 2019, status conference in this

matter. Rather, a monetary sanction in line with that imposed in *In re Sheesley* is appropriate.

The premises considered, it is hereby

**ORDERED** that Attorney Massucco shall pay $400 to the Clerk of the Court no later than December 13, 2019, as a sanction for his conduct at the November 7, 2019, status conference in this matter.

S\_____
**Curtis V. Gómez
District Judge**